# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 1548 | DATE | 12/16/2003 |
| CASE TITLE | Michael Dewick vs. Maytag Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Dewick's motion to amend is granted. (34-1) Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | DEC 17 2003 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | 12/16/2003 |
| | Copy to judge/magistrate judge. | date mailed notice |
| SN | courtroom deputy's initials | SN mailing deputy initials |

Document Number: 41

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL A. DEWICK, SR., et al., )
etc., )
 )
              Plaintiffs, )
 )
v. ) No. 03 C 1548
 )
MAYTAG CORPORATION, et al., )
 )
              Defendants. )

DOCKETED

MEMORANDUM OPINION AND ORDER

DEC 17 2003

Michael and Holly Dewick (collectively "Dewicks") have brought suit against Maytag Corporation ("Maytag") on behalf of their son Michael Dewick, Jr. ("Michael Jr."), who was seriously injured when--at the age of ten months--he crawled inside the broiler section of a kitchen range manufactured by Maytag.[1] Dewicks have now filed a motion to amend their Complaint's prayer for relief by adding the possibility of imposing punitive damages based on Maytag's conduct, and the parties have completed the briefing on that motion.[2] For the reasons explained here, their motion is granted under the standards established by Fed. R. Civ. P. ("Rule") 15(a).[3]

---

[1] All references to materials submitted by Dewicks and Maytag are respectively designated "D." and "M.".

[2] After this opinion was completed but had not yet been transcribed in final form, Maytag noticed up a motion to strike part of Dewicks' R. Mem. Because it is evident that this opinion did not rely at all on the complained-of portion of Dewicks' submission, that motion is denied as moot.

[3] Contrary to what Maytag contends, Dewicks' motion is controlled by Rule 15(a), not by the section of the Illinois Code

## Factual Background

Dewicks allege that their Maytag range was "defective, unreasonably dangerous, and not reasonably safe for its intended and forseeable uses" (Compl. ¶10). Essentially Dewicks assert that there were inadequate warnings alerting consumers, or other safety devices protecting children against the situation, that (1) the broiler door on the range could be opened with a minimal amount of force and (2) because one burner unit heats both the broiler and the oven, the broiler portion of the range becomes hot (sometimes even hotter than the oven) even when only the oven is in use--the situation when Michael Jr. sustained his injuries (Compl. ¶¶10, 13; D. Motion, Background ¶¶4,7,8).[4] Furthermore, Dewicks contend that Maytag was aware of the problems with the broiler well before Michael Jr.'s injury because of earlier and

---

of Civil Procedure that establishes prerequisites for seeking punitive damages (735 ILCS 5/2-604.1). It has been black-letter law for nearly four decades that a federal court sitting in diversity and applying state substantive law applies its own federal procedures over conflicting state procedures, particularly where the federal procedure is embodied in an applicable and valid provision such as Rule 15(a))(Hanna v. Plumer, 380 U.S. 460, 471 (1965)). And not surprisingly, given the placement of the requirement for pleading punitive damages invoked by Maytag in the Illinois Code of Civil Procedure, that requirement is clearly procedural rather than substantive in nature (Probasco v. Ford Motor Co., 182 F.Supp.2d 701, 704-05 (C.D. Ill. 2002) and cases cited there).

[4] Dewicks' Complaint originally stated that Michael Jr.'s injury occurred while the broiler was in use (Compl. ¶9), but their later submission states that only the oven (and not the broiler) was in use at the time of his injury (D. Motion, Background ¶35).

substantially similar incidents involving the same range model, but that Maytag did not properly investigate those incidents (D. Motion, Background ¶¶10-13, 19, 21, 27-29). Finally, Dewicks assert that Maytag decided to redesign the range so that more force would be required to open the broiler door, but it did not implement that change until after the range that injured Michael Jr. had been manufactured and sold to Dewicks (D. Motion, Background ¶¶23-26, 30).

## Rule 15(a) Standard

Rule 15(a) specifies that leave to amend "shall be freely given when justice so requires." That rule of lenity has been read as giving district courts discretion to deny such leave for a limited variety of reasons, including a recognition that allowing an amendment would be futile (Foman v. Davis, 371 U.S. 178, 182 (1962)). In making the latter determination courts consider whether the complaint as amended would fail to state a claim upon which relief could be granted according to the generous test established by Rule 12(b)(6) (Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir. 1997)), under which denial of the amendment is called for "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). And for that purpose the court accepts all well-pleaded allegations as

3

true and draws all reasonable inferences in Dewicks' favor (Sherwin Manor Nursing Ctr., Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994)).

## Application of the Rule 15(a) Standard

Under long established Illinois law, which the parties and this Court all agree controls under Erie v. Tompkins principles, punitive damages may be awarded where a defendant has committed a tort under circumstances showing "fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others" (Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359 (1978)). To that end a plaintiff must show that defendant has exhibited willful and wanton conduct indicating a high degree of moral blame, such as that akin to an intentional tort or crime (Loitz v. Remington Arms Co., 138 Ill.2d 404, 415-16, 563 N.E.2d 397, 402 (1990); Manuel v. Red Hill Cmty. Unit Sch. Dist. No. 10 Bd. of Educ., 324 Ill. App.3d 279, 288, 754 N.E.2d 448, 457 (5th Dist. 2001)).

Moore v. Jewel Tea Co., 116 Ill. App.2d 109, 135-37, 253 N.E.2d 636, 648-49 (1st Dist. 1969), aff'd, 46 Ill.2d 288, 263 N.E.2d 103 (1970)) speaks of factors relevant in determining whether the conduct of a products liability defendant is willful and wanton. Those factors boil down to (1) defendant's knowledge of a defect in its product and its corresponding knowledge that

4

the defect is likely to cause injury and (2) its failure to take affirmative action to avoid the potential for injury arising from the defect--for example, including a warning with the product or remedying the defect (Moore, 116 Ill. App.2d at 136-37, 253 N.E.2d at 649; Kopczick v. Hobart Corp., 308 Ill. App.3d 967, 974, 721 N.E.2d 769, 776 (3d Dist. 1999); Moore v. Remington Arms Co., 100 Ill. App.3d 1102, 1112-13, 427 N.E.2d 608, 616 (4th Dist. 1981)).

As for the first of those considerations, Illinois courts recognize the existence of prior substantially similar occurrences as substantively relevant to show that a defendant had knowledge of an alleged defect and of the likelihood of injury from that defect (Moore v. Remington Arms, 100 Ill. App.3d at 1110-11, 427 N.E.2d at 614-15; Barton v. Chicago & N.W. Transp. Co., 325 Ill. App.3d 1005, 1031, 757 N.E.2d 533, 555 (1st Dist. 2001)). Here Maytag had been alerted in March 2000 that one-year-old Damon Drozd was severely burned when he opened the broiler door on his family's Maytag range while his mother was using the oven portion of the range (D. Motion, Background ¶¶10-13). Then Maytag became aware of another incident in May 2001 in which one-year-old Christian Garland was also severely burned when he opened the broiler door on the Maytag range in his home while his foster mother was using the oven portion of the range

(D. Motion, Background ¶¶27-28).

Maytag asserts that even if it had knowledge of the <u>characteristics</u> of its range from prior substantially similar occurrences, that does not equate to its knowledge of a <u>defect</u> or likelihood of injury from the defect (M. Mem. 9, 14). But because what Maytag terms as "characteristics" played a vital role in causing the Drozd and Garland injuries, that is really a distinction without a difference in the futility analysis (again this Court neither makes nor implies a decision either way as to whether Maytag's range was defective or likely to cause injury--once more those are matters for future determination, not for resolution at the pleading stage).

---

[5] Although Maytag as a corporate entity first became aware of the Drozd incident in March 2000, when Mrs. Drozd called Maytag's customer service department to report the injury, knowledge of the accident may not be ascribable to Maytag's Product Assurance Department until October 2000, when the Drozds' attorney wrote the manufacturer, and Maytag Corporate Product Safety Director Isaac Sargunam ("Sargunam") does not recall knowing of the Drozd claim until early 2001 (D. Motion, Background ¶¶10, 12, 13, 18). Although the Garlands' contact with Maytag at the time of Christian's injury was also through its customer service telephone line, the Garlands did not thereafter bring a personal injury claim as did the Drozds. It is unclear from the current submissions whether the Garland family had any further contact with Maytag. Sargunam made no mention of the Garland incident during the course of his deposition (D. Motion, Background ¶¶27-29 and M. Mem. 6-7), but D. R. Mem. 6-7 and its Ex. E refer to some additional documents that Maytag turned up dealing with the Garland claim. What the full story is in that regard, and whether the circumstances might ultimately defeat Dewicks' punitive damages claim (as discussed hereafter), are for the future--what controls now is that they do not justify a refusal to allow amendment of the Complaint on notions of futility at this point in the litigation.

6

Maytag's stronger argument is that the Drozd and Garland claims did not put it on _sufficient_ notice to establish willful and wanton conduct. Maytag leans heavily on the Loitz teaching that the mere existence of prior substantially similar occurrences does not mandate a finding of willful and wanton conduct without an examination of such factors as the total number of products sold, the total amount of usage and the product's inherent dangerousness (Loitz, 138 Ill.2d at 419-20, 563 N.E.2d at 404). Those factors bear on whether a manufacturer's failure to take some affirmative action to abate the problem amounts to willful and wanton conduct.

But on that score it is clear that such an analysis is primarily a fact-based inquiry that does not easily lend itself to resolution at the pleading stage. Thus Maytag's rattling off of cases where greater numbers of prior substantially similar occurrences did not trigger the imposition of punitive damages completely ignores a central principle of Loitz: that the decision to allow (or disallow) punitive damages is a more nuanced process than merely engaging in a rote comparison of numbers.[6]

---

[6] Indeed, an examination of such cases reveals that the ultimate decisions to preclude punitive damages are really based on a combination of factors, only one of which is an observation about the number of accidents in relationship to the total number of products/total amount of use (see, e.g., Stojkovich v. Monadnock Bldg., 281 Ill. App.3d 733, 744-45, 666 N.E.2d 704, 712-13 (4th Dist. 1996)).

7

Moreover, the underpinning of the Loitz factors itself negates any notion of threshold futility. As Barton, 325 Ill.App.3d at 1032, 757 N.E.2d at 555 points out:

> Loitz and its progeny involve inherently dangerous products or situations. As the supreme court noted, "guns are inherently dangerous instrumentalities, and the mere occurrence of other explosions does not, without more, establish outrageous misconduct or some other basis sufficient to warrant the imposition of punitive damages."

In contrast, the bulk of courts (but not all) that have considered the issue have determined that stoves and ovens are not inherently dangerous (see, e.g., Walker v. Wittenberg, Delony & Davidson, Inc., 412 S.W.2d 621, 625 (Ark. 1967) and cases cited there; cf. Enis v. Ba-Call Bldg. Corp., 639 F.2d 359, 364 (7th Cir. 1980)(applying Illinois law as to electrical heating appliances)).[7] Illinois courts that have applied Loitz have found the distinction between inherently dangerous and non-inherently dangerous products to be critical for an obvious reason: Because the use of that first category of products can by definition be expected to lead to accidents even if the

---

[7] Those citations represent only the tip of an iceberg of cases, located by this Court's law clerk, that consider the inherently dangerous issue--a number of which cases go the other way. It is disturbing under those circumstances to encounter this flat--and unsupported (and obviously unresearched)--statement by Dewicks' counsel at R. Mem. 4:

> In the instant case, a household cooking appliance is not an inherently dangerous product. There is no authority to suggest that a household cooking appliance is an inherently dangerous product.

8

products themselves are not defective, it takes a good many more adverse occurrences before the manufacturer is considered to be on notice of a problem with the product itself, such that the manufacturer's failure to take affirmative steps to cure the problem may be viewed as willful and wanton conduct (see Barton, 325 Ill. App.3d at 1032, 757 N.E.2d at 555; Kopczick, 308 Ill. App.3d at 975, 721 N.E.2d at 776).[8]

Ultimately, at the very least Dewicks have a colorable argument that if they can persuade a factfinder that Maytag's range was defective and likely to cause injury, they may also be able to carry the day in Loitz terms as to whether Maytag had sufficient notice of the defect and of the likelihood of injury arising from that defect to require steps that Maytag failed to take. And an affirmative answer to that inquiry could qualify as establishing Maytag's willful and wanton conduct, and hence its vulnerability to a punitive damages award.

As for the second Moore v. Jewel Tea factor (whether Maytag took sufficient steps to cure the known defect), it necessarily comes into play only once an affirmative answer has been given to

---

[8] On a related issue, Maytag asserts that it did not have notice as to a defect with its range because the range complied with the American National Standard for Household Cooking Gas Appliances (M. Resp. ¶B). But because industry standards are merely relevant (and not conclusive) as to whether a particular product is defective, such compliance also does not render Dewicks' motion futile (Ruffiner v. Material Serv. Corp., 116 Ill.2d 53, 58, 506 N.E.2d 581, 584 (1987)).

9

the just-analyzed first factor. That being so, it is difficult to isolate that second factor entirely. But it seems obvious that given the premise that Dewicks may demonstrate that Maytag had sufficient notice of a defect in its range and of the likelihood of injury from that defect, their proposed amendment also satisfies the second Moore requirement.

For example, one consideration on that score would be whether Maytag conducted a good faith investigation after the Drozd and Garland claims were made (Loitz, 138 Ill.2d at 427, 563 N.E.2d at 407). Dewicks claim that Maytag did not conduct a sufficient investigation (in fact, did not conduct any investigation at all)(D. Motion, Background ¶¶19, 21,29; D. R. Mem. 2-3, 5). Maytag's Mem. 10 and 15 respond that Maytag did investigate the Drozd and Garland claims and that in any event the presence or absence of an investigation is moot because Maytag was not in good faith required to investigate (a claim based on an incomplete and potentially flawed Loitz analysis).

As with earlier issues, that conflict poses a factual dispute that must be decided in Dewicks' favor now, to be settled only later on in the litigation. Indeed, Maytag's very invocation of a good faith claim renders that issue one to be fleshed out as the case goes forward, not cut off at the pleading stage (Schawk, Inc. v. Donruss Trading Cards, Inc., 319 Ill. App.3d 640, 651, 746 N.E.2d 18, 27 (1st Dist. 2001)).

10

That is equally true as to the question whether Maytag gave adequate warnings about the dangers of its range (Kopczick, 308 Ill. App.3d at 974, 721 N.E.2d at 776). Though Maytag did provide general child safety warnings with its range (M. Resp. ¶E), it gave no warnings about the tendency of the broiler to heat up while only the oven was in use or about the minimal amount of force required to open the broiler door (D. Motion, Background ¶8). Both the existence and the scope of a manufacturer's duty to warn are closely linked to the existence of a potentially dangerous defect and to whether or not the product is inherently dangerous (Carrizales v. Rheem Mfg. Co., 226 Ill. App. 3d 20, 25, 589 N.E.2d 569, 573 (1st Dist. 1992); D. R. Mem. 9-10). Once again, the issue of Maytag's failure to warn about those more specific aspects of its product, on the premise that such failure may assertedly bear on its eventual liability to Dewicks for punitive damages, cannot be conclusively determined at the pleadings stage.

One other aspect of potential proof requires discussion: the possible consideration of Maytag's decision to change the design of the broiler door before Michael Jr. sustained his injury (that decision was the result of Sargunam's awareness of the Drozd infant's earlier--and entirely comparable--tragic experience), while the change was not actually implemented until after Michael Jr. had suffered like burns. In that respect both

11

sides' counsel have again exposed the fact that they are essentially state court, and not federal, personal injury practitioners (though Maytag's counsel did remove this action from its state court of origin to this District Court): Just as both counsel had pitched their battle tents on the ground of the obviously inapplicable 735 ILCS 5/2-604.1, with its statement of Illinois state court pleading requirements for any effort to obtain punitive damages (see n.3), they have tilted their lances solely in terms of Illinois state court rulings as to admissibility of the evidence in question (D. Mem. 16-18, 20-21; M. Mem. 15-19; D. R. Mem. 9-10).

That discussion misses the mark, of course, because the evidentiary issue of admissibility of that pre-injury design change decision is a procedural matter governed by the Federal Rules of Evidence and federal caselaw (Flaminio v. Honda Motor Co., 733 F.2d 463, 470-72 (7th Cir. 1984)). And the obvious place to begin that inquiry is Fed. R. Evid. ("Rule") 407, which addresses the admissibility or inadmissibility of remedial measures to prove, among other things, "a defect in a product, a defect in a product's design, or a need for a warning or instruction."

But the clue to the appropriate treatment here is that Rule 407 operates to exclude evidence only as to measures taken subsequent to an "event" (under the uniform decisions applying

12

the Rule, in this case that means Michael Jr.'s injury)(see, e.g., Traylor v. Husqvarna Motor, 988 F.2d 729, 733-34 (7th Cir. 1993); Bogosian v. Mercedes-Benz of N. Am., Inc., 104 F.3d 472, 481 (1st Cir. 1997)). That certainly does not foreclose the clear admissibility of Maytag's pre-injury <u>decision</u> to increase the force needed to open the broiler door (Kaczmarek v. Allied Chem. Corp., 836 F.2d 1055, 1060 (7th Cir. 1987)), though in Kaczmarek our Court of Appeals was loath to find that such admissibility also called for the admission of evidence that the decision was implemented later (id.).[9] And this Court will of course conform to our Court of Appeals' teaching in both respects.

Lastly, under Illinois law corporations may be subjected to punitive damages awards only (1) where the willful and wanton conduct giving rise to such damages can be attributed to an employee with managerial capacity or (2) where a managerial agent or superior officer has authorized or ratified the conduct for the corporation (Jannotta v. Subway Sandwich Shops, Inc., 225 F.3d 815, 817 (7th Cir. 2000), reiterating the principle announced in an earlier appeal, 125 F.3d 503, 513 (7th Cir. 1997) and cases cited there; Kemner v. Monsanto Co., 217 Ill.App.3d

---

[9] It is worth noting parenthetically that the reading of both facets of the Kaczmarek opinion just set out in the text was also shared by the Fourth Circuit in Humphries v. Mack Trucks, Inc., No. 98-1970, 1999 WL 815067, at *7 (4th Cir. Oct. 13).

13

188, 205-07, 576 N.E.2d 1146, 1156-58 (5th Dist. 1991)). As Maytag's Corporate Product Safety Director as well as Chairman of its Product Safety Committee, Sargunam certainly appears from Dewicks' pleadings to be at a high enough level in the corporate hierarchy to negate any rejection of Dewicks' amendment on futility grounds under the corporate complicity doctrine (D. Motion, Background ¶1).

### Conclusion

Clearly the central theme here is that while it is too early in the game to determine whether Dewicks will ultimately succeed in mulcting Maytag in punitive damages, it would be wholly improvident to restrict them from trying (see Moore v. Remington Arms, 100 Ill.App.3d at 1112-13, 427 N.E.2d at 616). Because the proposed amendment plainly does not come within the futility exception to the generous standard mandated by Rule 15(a), nor do any of the other exceptions taught by Foman v. Davis apply, Dewicks' motion to amend is granted. And because the motion involves only an addition to the Complaint's prayer for relief, Maytag need not amend its Answer (which already challenges Dewicks' entitlement to any relief at all).

_____
Milton I. Shadur
Senior United States District Judge

Date: December 16, 2003

14