## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1548 | **DATE** | 11/30/04 |
| **CASE TITLE** | Michael A. Dewick vs. Maytag Corp., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. There is not need to repeat by way of summary what has been said earlier in this opinion. Suffice it to say that Dewicks' motion in limine is granted in part and denied in part for the reasons that have been stated here. (74-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 0 2 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | rbf docketing deputy initials | 11 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 12/1/2004 date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL A. DEWICK, SR., et al., etc.,

          Plaintiffs,

v.                          No. 03 C 1548

MAYTAG CORPORATION, et al.,

          Defendants.

DOCKETED DEC 0 2 2004

## MEMORANDUM OPINION AND ORDER

This Court apologizes to counsel for its delay in dealing with some issues that were left on the table for decision but have not been addressed earlier, despite the imminence of trial. Although these are not offered by way of actual justification, two factors principally explain that delinquency:

    1. Since mid-August this Court has been occupying chambers other than its own, the result of an all-encompassing flooding of its 23rd floor chambers and jury room that has led to their total demolition and to a reconstruction-in-progress. As a result this Court has been living out of nearly innumerable cartons of papers, with the exception of case files contained in its metal filing cabinets. Unfortunately the files in cases that had already reached the final pretrial order ("FPTO") stage (such as this one) had been kept in a separate location, which resulted in their being buried within some of the many cartons of papers.

2. Even more significantly, this Court's systematic (and ordinarily successful) effort to stay current in dealing with all pending and undisposed-of motions depends primarily on the computer-generated printouts of all pending motions in cases assigned to its calendar--printouts that this Court orders every 10 days to two weeks. For some inexplicable reason, those printouts have not reflected any motion as pending in this action, so that it was only as the result of counsel's just-received telephone call reminder to this Court's minute clerk that the matter was brought to this Court's attention.

Although this should not be misunderstood as voicing any criticism (it is not so intended), as things have turned out it would have been helpful if the parties' counsel (who were mindful of the unresolved items, as this Court has just indicated it was not) had inquired earlier about the open matters, for the present timing is especially unfortunate. As it happens, this Court will be away beginning December 1 in attendance at an ALI-ABA advanced course of study on Trial Evidence in the Federal Courts in New York City (this Court is one of the faculty members for that program), after which it will be sitting with the Court of Appeals for the Third Circuit in Philadelphia on December 6 and 7.

In any event, what follows will for the most part be

conclusory in nature as a matter of necessity, rather than spelling out this Court's reasons in the detailed manner that it regularly employs. This more shorthand treatment does not reflect anything less than this Court's serious consideration and resolution of the questions--simply the inability to spell things out because time will not permit.

First as to Maytag's net worth, which is relevant to Dewicks' claim for punitive damages, clearly fair market value rather than book value is a far more accurate measure of a corporation's ability to pay any such damages that might be awarded. This Court will of course conform to the law both in instructing the jury and in evaluating any such award that the jury might choose to make--but insofar as net worth is a relevant consideration, the totally artificial construct of historical book value has nothing to commend it.

Next is Dewicks' motion in limine--Schedule L to the FPTO. There Dewicks' counsel correctly observe that this Court has ruled on several occasions, and in several different ways, that the effect of the Illinois caselaw that immunizes parents against children's claims of the sort made on behalf of Dewicks' son here (so that, for example, no contribution claim can be advanced by Maytag) is to bar Maytag from adducing evidence as to the parents' claimed negligence, or as to the claimed unreasonableness of their supervision (or lack of it). Again that does not

3

prevent Maytag from seeking to persuade the jury that the parents' conduct was the sole cause of the child's injuries, with the corollary that Maytag's conduct bore no causal relationship to those injuries.[1]

In turn, what has just been said calls for imposing a tight rein on Maytag's attempt to bring into the case a host of exhibits that would impermissibly muddy the waters in that regard. What comes hereafter seeks to particularize the problems with Maytag's proposed exhibits that are challenged by the Dewick motion.

> Dewicks' objections to Maytag's Exs. 4, 9 and 37-71 state:
>
> These 36 exhibits [sic--should be 37] are pamphlets, articles, and other literature which suggest that it is a good idea to keep children out of the kitchen. These exhibits are irrelevant. Negligence of the parents is not an issue in this case. It would be extremely prejudicial to the plaintiff and would be confusing and misleading to the jury should the defense even begin to attempt to introduce these exhibits into evidence.

To the extent that such objections are an accurate characterization, they echo what has just been said in this opinion.

But against such a proposed blanket exclusion, Maytag relies in principal part on the fact that its expert has relied on the challenged exhibits in reaching his conclusions (see Fed. R.

---

[1] If the jury were to determine that the conduct of both Maytag and the parents contributed to the child's injuries and that Maytag had violated its duty of care, Maytag would of course be fully liable.

4

Evid. ("Rule") 703). In doing so, Maytag does acknowledge that its attempted justification would not support providing the documents themselves to the jury as exhibits--it relies instead on Rule 803(18) as the basis for reading relevant excerpts into the record.

There is something fundamentally troubling about such an attempted back-door argument. If the question at issue is Maytag's exercise or nonexercise of due care in connection with its design of the broiler door, as would surely seem to be the case under ordinary negligence principles, testimony as to what materials the expert has relied on post hoc--as to which there is no proof that Maytag itself ever considered such materials--is surely problematic. Thus an impermissible quantum leap would appear to be involved in Maytag's purported justification for bringing its Exs. 48, 49, 53, 56, 57, 58 and 61-69 into the case (emphasis added):

> These were all reviewed and relied upon by Maytag's expert, who opines that the range and broiler design is reasonably safe. Maytag's expert will testify that in designing the broiler door, <u>Maytag had to take into consideration</u> all users and that this design works well for the elderly and handicapped who would have difficulty opening a door that was harder to open.

Absent a showing that Maytag <u>did</u> take those things into consideration, the expert's ipse dixit would not appear to do the job.

As for all of the other exhibits in the already-identified

5

list (except for Maytag Ex. 37), Maytag asserts quite comparable justifications. In addition to stating that its expert relied upon those materials, its counsel state:

> These documents all state in one form or another that a kitchen is a dangerous place for young children during meal preparation and that they should be kept out of the kitchen. These documents are all relevant to Maytag's expert's opinion that the subject broiler is reasonably safe and that Maytag's design consideration that parents must keep children away from the range and broiler while it is operating was a reasonable decision. These documents show that as a society, experts on safety recognize the dangers posed to children by appliances such as a range and that these experts call for parents to ensure that their children are kept out of the kitchen. These documents are also relevant to Maytag's expert's opinion that the sole proximate cause of this accident was the failure of the Dewick parents to keep the child away from the broiler while it was on.

What has been said as to the earlier-ruled-upon exhibits appears to apply here with equal force, and thus calls for comparable restrictions. Maytag will have to do better in particularizing matters that go to the sole proximate cause issue, as contrasted to addressing either (1) the parents' asserted fault or (2) matters that the expert looked into, but that Maytag had not, in making its design decisions.

But even to the extent that Rules 703 and 803(18) might otherwise support Maytag's position as to getting excerpts from those materials into the case, the potential for misleading the jury or for other undue prejudice in light of the unusual situation presented by the Illinois doctrine of parental immunity

calls for the limited use of such materials in conjunction with the expert's testimony. That consideration requires further discussion among this Court and the parties' lawyers of careful limitations and constraints before the expert takes the stand.

One exhibit remains for discussion out of the 37 referred to in Dewicks' original objection: Maytag Ex. 37. On that score Maytag says that its expert's reliance on that Good Housekeeping survey is offered to demonstrate how few accidents have occurred out of the many hours of use of this particular model of Maytag's broilers. Because Dewicks' counsel has not addressed Ex. 37 in those terms, their objection is overruled at this point (subject to possible further consideration if they were to identify problems with Maytag's position).

Dewicks' second objection to the Maytag exhibits involves Ex. 14(a), a video that shows Michael Jr. opening a lower kitchen drawer a few weeks before the accident, in addition to depicting some other activity by the child during the same time frame. That material appears relevant to the extent that it may advance Maytag's position regarding sole causation, although care must be exercised to avoid collision with the constraints imposed by Rule 404(b). Hence the objection is overruled, with appropriate limits to be imposed at the time of trial in conjunction with the parties' arguments and the jury instructions.

Finally, Dewicks object to Maytag Exs. 21(d) through 21(t)

and 21(w) through 21(gg). In that respect Dewicks' counsel are right that many of those exhibits appear to have no purpose other than the impermissible one of urging negligence on the part of the parents (something that would also present a Rule 404(b) problem as well as the already-expressed problems). Maytag's counsel offers the lame explanation that other items in the home pose hazards to children, which is somehow said to demonstrate that the Maytag range is not unsafe. That position is unpersuasive, although some use of the challenged exhibits may be permissible simply to inform the jury as to the layout of the Dewick home. In sum, that aspect of Dewicks' motion is granted except as to any such exhibits that Maytag identifies as fulfilling the purpose stated in the preceding sentence.

## Conclusion

There is no need to repeat by way of summary what has been said earlier in this opinion. Suffice it to say that Dewicks' motion is granted in part and denied in part for the reasons that have been stated here.

                                                                      */s/ Milton I. Shadur*
                                                  Milton I. Shadur
                                                  Senior United States District Judge

Date: November 30, 2004